W. W. Ashe *v.* George T. Webb.*

(*Jackson.*    April Trm, 1919.)

1. **PARTNERSHIP.** No salary to partner in absence of agreement.
Generally salaries will not be allowed to partners for services ren-
dered in conducting the firm business without satisfactory proof
of a contract therefor.   (Post, p. —.)

Cases cited and approved: Godfrey v. Templeton, 86 Tenn., 161;
Street v. Thompson, 229 Ill., 613; Boisnot v. Wilson, 109 App. Div.,
569.

2. **MASTER AND SERVANT.** Employer's salary proper expense
charge under agreement giving employee share of profits.
Where owner of business, who had been drawing a salary from the
profits of the business, entered into contract, giving employee cer-
tain percent. of profits for certain period, without stipulating as
to whether owner was to draw salary, and where such employee
knew that such salary was being drawn and amount thereof was
being charged to expenses, and made no objection thereto, the
amount of the salary so withdrawn will not be included in amount
of profits, as basis for ascertaining portion thereof to which em-
ployee was entitled.   (Post, p. —.)


FROM SHELBY.


Appeal from the Chancery Court of Shelby County.—
Hon. I. H. Peres, Chancellor.

G. J. McSpadden, for appellant.

J. H. Watson and D. W. DeHaven, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

This is an appeal in error by the defendant, Webb, from a decree of accounting rendered by the chancellor in the above-styled cause between the complainant and the defendant.

Among the items involved in the account taken and stated between the complainant and the defendant was one of salary due Webb for services rendered, amount-·ing to $7,200 under a certain contract entered into between him and the complainant in the year 1907. The defendant, Webb, at the time of the execution of said contract was engaged in the business of a cotton factor in the city of Memphis, Tenn. The contract was in writing, and by its terms Ashe was employed by Webb to act as secretary and treasurer of said business, which was being operated under the firm name of George T. Webb & Co., but was owned exclusively by said Webb; to sell cotton on the markets; to keep the cotton books; and to do any other matter that would tend to promote said business. The contract provided that the complainant, Ashe, should have 20 per cent. of the net profits of said business, which it was guaranteed by Webb would amount to not less than $2,400 per year during the term of the contract. The contract further provided that the sum of $150 should be paid to the complainant each month, and that the balance of the compensation due him under said contract should be paid to him at the end of the contract period. The contract was for a term of three years, beginning September 1, 1907, and expiring September 1, 1910.

On September 1, 1910, another written contract was entered into, by which the first contract was extended for an additional period of three years, or until September 1, 1913.   In the second contract it was agreed that, at the expiration of the extended term thereof, the interest and profits of said business accruing to said Ashe should be ascertained and paid to him, unless by an agreement between the parties, the contract should be further extended.   In this extension it was further expressly agreed that the defendant, Webb, should receive a salary of $6,000 per annum during the term of said extention, the same to be paid to him from the profits of the business, and that said salary should be charged and accounted for as a part of the expenses of said business, and so reckoned in arriving at the net profits of the same.

At the expiration of this first extension, on September 1, 1913, the contract was further extended by an agreement of the parties for a further term of three years.   In this second and last extension of said contract the provision contained in the first extension pertaining to the salary that the defendant Webb should draw was in no way modified.

It was during the first period of the contract that Webb claimed he should be credited with salary in the sum of $200 per month for the entire contract period, aggregating the sum of $7,200, for services rendered by him in the business, and that this amount should be deducted from the profits of the business accruing during said contract period.

The chancellor refused to allow the defendant, Webb, credit for said salary item because the contract for the first period of three years did not provide that he should have any salary for services rendered by him in the business. This action upon the part of the chancellor is challenged by the defendant, Webb, in this court by proper and seasonable assignments of error.

It is insisted by Webb that, while the contract for the first period did not expressly provide that he should have a salary for his services, he drew the same with the full knowledge of the complainant, who consented thereto; that said salary was drawn by the defendant in monthly installments of $200 each during the first contract period, and should be considered as a part of, and charged to the expenses of, the business, and not considered as a part of the profits.

This contention is challenged by the executrix of the complainant, Ashe, who died while the cause was pending. Whereupon it was revived in the name of his widow, as executrix of his last will and testament. Ashe died without giving testimony upon the issue involved, or any other issue presented in the suit.

It is true that the contract for the first period of three years contained no stipulation that any salary should be paid to the defendant for his services. The contract upon the question of salary as to the defendant was silent.

The general rule is that salaries will not be allowed to partners for services rendered in conducting the firm business, without satisfactory proof of a contract therefor. *Godfrey* v. *Templeton,* 86 Tenn., 161, 6 S. W., 47;

*Street* v. *Thompson,* 229 Ill., 613, 82 N. E., 367; *Boisnot* v. *Wilson,* 109 App. Div., 569, 96 N. Y. Supp., 581.

The uncontradicted evidence shows that from the very beginning of the contract in 1907, the defendant each month was allowed to draw a salary of $200 per month which amount was charged to expenses on the books of the firm. The evidence shows that the complainant was entirely familiar with the books of the firm, and knew that the defendant was drawing said monthly sums as salary, and did so draw them throughout the entire contract period. He saw the entries on the books of the firm, and knew what the items were for, and discussed them with the bookkeeper, Mr. Prewitt, and approved them, stating to Prewitt that they were correct.

Mr. F. L. Wilson was bookkeeper for the firm during the first two years after Mr. Ashe was employed. Mr. Wilson testified that the defendant was regularly credited with his monthly salary of $200, and that it was charged on the books as a part of the expenses of the business, and that the complainant knew this fact, and made no objection. Wilson further testified that he aided the complainant in getting up a statement at the end of the first year's business. In that statement the defendant's salary was charged up as a part of the expenses of the firm. That statement showed the complainant's part in the profits to be $4,400 for that year.

It further appears that before the complainant became connected with the firm of George T. Webb & Co., the defendant drew this monthly salary, and it was charged on the books of the firm as a part of the expenses of the business.

It was held by this court in *Godfrey* v. *Templeton*, supra, that a contract, authorizing the partners in a firm to draw salaries therefrom, was established, as against the representative of a deceased partner, by the books and pay rolls of the firm which showed such payment, and which were kept under such circumstances as to create the presumption that the deceased partner must have known of such payments. In that case the court said:

"The allowance of salaries from the 1st of January, 1883, up to the death of Thomas Brown was proper.

"It is sustained by the books and pay rolls of the firm, which show that for this period the salaries claimed were actually paid to R. H. Brown and T. S. Godfrey in the lifetime of Thomas Brown, by the evidence of the witness, J. O. Brown, who kept the books part of the time, and says that the deceased was about the office and in the presence of the books and pay rolls at such times and under such circumstances that he must have known of the payment of these salaries; and by the presumption, under the facts of this case, in the absence of any proof to the contrary, that he, as partner, knew of the general course of the business of the firm, and of so important a part of its disbursements as the payment of these salaries. All these, taken together, authorized the allowance of the salaries for this period."

The case of *Street* v. *Thompson*, 229 Ill., 613, 82 N. E., 367, which is relied on by the complainant for his contention that the defendant is not entitled to receive a salary for the first contract period, is not controlling. In that case it was held that the salary of a partner

cannot be deducted from the profits of the department in ascertaining the share of an employee in such profits under a contract employing him at a stated salary, expenses, and one-half of the net profits of the department, where he has no notice of any salary agreement between the partners, or of their custom, in ascertaining net profits, to charge a proportionate amount of such salary to the department to which the partners devoted their attention.

The holding of the court in that case was based upon the ground that the employee had no notice of the salary agreement between the partners, or of their custom to charge a proportionate amount of such salary to the department in which he worked.

In the other case relied on by the complainant, the evidence showed that there was no contract by the owner of the business with his employee that he should draw any salary from the business. It appears, however, that the owner did deduct a certain salary from the profits of the business for two certain years, and charged it to the expense account of the business, and rendered to the employee a statement showing that said salary had been deducted from the profits of the business, and inclosed with said statement a check payable to the employee for his proportionate part of the profits, with the owner's salary deducted, which check the employee accepted and cashed without objection to the item of salary which the owner had paid to himself.

The court allowed the owner to retain the salary thus paid for said two years, but held that this did not entitle him to collect salary for subsequent years, in the

absence of a contract with the employee. This case is authority for the defendant's contention rather than that of the complainant in the instant case.

It furthermore appears that it was expressly agreed in the extension of the original contract on the 1st day of September, 1910, that the defendant should be entitled to receive a salary of $6,000 per year during the second contract period from the profits of the business, and that the same should be charged and accounted for as a part of the expenses of said business, and so reckoned in arriving at the net profits of the same, and in the second extension of said contract this provision was in no way modified. This is further evidence that there was an agreement between the complainant and the defendant that defendant should be allowed the salary drawn during the first contract period.

It results that the decree of the chancellor will be modified to the extent of allowing the defendant, Webb. a salary of $200 per month for the first contract period, aggregating the sum of $7,200. The effect of this modification is to reduce the amount decreed to be due the complainant from the defendant to the extent of $1,440 and a decree will be accordingly entered in this court. Contentions with respect to other controverted items in the account were disposed of in a memorandum filed, and need not be discussed in this opinion.