**HARRY ALTER COMPANY, an Illinois corporation, Plaintiff-Appellee,**

v.

**CHRYSLER CORPORATION, a Delaware corporation, Defendant-Appellant.**

**No. 12997.**

United States Court of Appeals Seventh Circuit.

Nov. 18, 1960.

As Amended on Denial of Rehearing Feb. 3, 1961.

904

Douglas C. Moir, Edward J. Wendrow, Chicago, Ill. (Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel), for appellant.

Richard L. Kahn, Chicago, Ill., Eugene R. Johnson, Peoria, Ill., Fischel, Kahn, Heart & Weinberg, Chicago, Ill., Miller, Westervelt & Johnson, Peoria, Ill., for appellee.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge, and MERCER, District Judge.

MERCER, District Judge.

The above cause was tried by the court, without a jury, upon plaintiff's complaint sounding in fraud and deceit for damages, and upon defendant's counterclaim against plaintiff for a balance due upon an open account. Plaintiff is an Illinois corporation engaged in the business of selling parts, tools and equipment to contractors in the refrigeration and air conditioning industry. Defendant, a Delaware corporation, acting through its Air-Temp Division, is engaged in the sale of central air conditioning and heating equipment.

At the close of all the evidence, the trial court found that defendant had, beginning in August, 1956, solicited plaintiff to become a franchised distributor of defendant's Air-Temp products in the Chicago area; that defendant, to induce plaintiff to become its distributor, had represented to plaintiff that the volume of sales of two predecessor distributors in the area for the period of the immediately preceding twelve months had totaled $1,321,518.94; that the sales volume of those distributors was overstated by that representation by a monthly average of 94.86% of actual volume to induce plaintiff to enter into a distributorship franchise agreement; that plaintiff, in reliance upon that misrepresentation, had entered into the distributorship venture; and that, as a direct and proximate result of its reliance upon the false representation as to volume of sales, plaintiff sustained damages through losses in the amount of $196,-179.32.

No evidence was introduced upon the counterclaim. After both parties had rested in the trial upon the complaint, the parties stipulated that the amount due to defendant from plaintiff upon the account stated was $24,331.68. The court entered judgment for defendant for that amount upon the counterclaim, and entered a net judgment in plaintiff's favor for the amount of $171,847.64 and costs of suit. Defendant appeals from that judgment.

Defendant contends that plaintiff failed to prove by clear and convincing evidence that it relied upon the false sales figure in entering into the distributorship agreement with defendant. It relies upon Weininger v. Metropolitan Fire Ins. Co., 359 Ill. 584, 598, 195 N.E. 420, 98 A.L.R. 169; Bundesen v. Lewis, 368 Ill. 623, 633, 15 N.E.2d 520, and Regner v. Hoover, 318 Ill. 169, 173, 149 N.E. 16, as principal support for its argument. We do not construe those cases, as defendant would have us do, as establishing a burden of proof in fraud cases which requires more than a mere preponderance of the evidence. The language of each of those opinions upon which defendant principally relies represents only the state court's reaction to the particular factual situation presented, not a statement of principle establishing an exaggerated burden of proof.

Weininger involved a plea of fraud as a defense to a claim for indemnity for fire loss, the insurer contending that the claim as to the value of lost property had been fraudulently overstated. Bundesen was an action for rescission of a contract for the purchase of lands which was predicated upon the claim that the sellers had fraudulently represented that a state highway would be built along one side of the lands involved. The decision rests upon the court's holding that the purchaser was chargeable with notice of the true state of facts which a reasonable inspection of the lands and reasonable diligence in inquiry would have disclosed. Regner involved a collateral attack upon a default equity decree by bill of review, the complainant contending that her fail-

ure to defend had been induced by fraudulent misrepresentations of the complaint in the original suit.

■ The quantum of proof required of plaintiff in this case was proof by a preponderance of the evidence of each element necessary to support a judgment in its favor. Barrett v. Shanks, 382 Ill. 434, 47 N.E.2d 481; See generally, I.L.P. Fraud §§ 47, et seq. Thus, it was incumbent upon plaintiff to prove by a preponderance of the evidence that a false representation was made as to some material fact, that the defendant know of the falsity and intended that plaintiff should rely upon the representation, that plaintiff, in ignorance of the falsity thereof, did rely upon the false representation, and that damage to the plaintiff resulted from its reliance thereon. Roda v. Berko, 401 Ill. 335, 339–340, 81 N.E.2d 912.

■ The evidence adduced at this trial supports the trial court's findings of the existence of each of those material elements. Briefly summarized, the transcript adequately supports the following version of events leading up to this law suit. Smith, defendant's assistant regional manager, approached plaintiff's president, Harry Alter, suggesting that plaintiff undertake the exclusive distributorship of defendant's Air-Temp products in the Chicago area. Smith was told that plaintiff would not be interested in the proposition unless at least one million dollars per year of sales volume could be anticipated. Mr. Alter asked Smith to provide plaintiff with figures showing the volume of sales in that area for the immediately preceding twelve months' period by distributors whom it was anticipated that plaintiff should succeed. On or about September 26, 1956, Smith gave Mr. Alter a written document showing sales for such period of $1,321,518.94. That figure overstated the volume of sales by plaintiff's predecessor distributors by slightly more than 94% of actual volume. Thereafter, on October 25, 1956, plaintiff signed an agreement for the Air-Temp distributorship franchise, purchased the inventory of its predecessor distributors and additional inventory from defendant, and commenced business as a distributor for defendant. The distributorship was a red-ink proposition and substantial losses ensued. In August, 1957, plaintiff notified defendant that it was terminating the franchise. Thereafter, plaintiff abandoned the Air-Temp distributorship, except that it liquidated its inventory which defendant refused to take back. In November, 1957, plaintiff learned for the first time that the initial figures as to sales volume given to it by Smith had been false. Pertinent, to the question of the falsity of the figures, Smith testified that he had given false figures to plaintiff, stating, in effect, that the actual sales figures were so low that he had doubled them.

■■ Defendant points to conflict in the evidence relative to the time when the false figures were given to plaintiff, and relative to other material facts. The resolution of such evidentiary conflicts is the precise function for which our trial courts sit. It is only necessary for us to determine on review whether the findings supporting the judgment have an evidentiary basis. The findings in the case at bar are so supported, and defendant's contention against them must be rejected upon the established principle that the findings of fact of a trial court will not be disturbed on appeal unless clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C.A.; E. g., Weissman v. Cole Products Corp., 7 Cir., 269 F.2d 340; Zeddies v. C. I. R., 7 Cir., 264 F.2d 120.

■ Defendant's contention that the award of judgment to plaintiff in the amount of $196,179.32 is erroneous must be rejected. The trial court fixed the amount of the judgment upon the basis of the profit and loss statement introduced by plaintiff as an exhibit to show expenses allocated on its books and records to the Air-Temp operation. That exhibit was admitted without objection and upon the stipulation of the parties that it was an accurate representation of facts as shown by plaintiff's books. How-

ever plaintiff's damage computation exhibit was received in evidence specifically subject to the broad qualification. "I don't agree with the authenticity of it or that they are entitled to recover any damages." This qualification relates not to admissibility but to the weight assigned to various items thereon in the computation of damages incurred. We assume that defendant did, in its argument before the trial court, as it now claims, object to the inclusion of certain allocated expenses as shown by the exhibit in the computation of the judgment. We must also assume that the trial court considered those arguments in its determination of the weight to be assigned to these various items. The trial judge has a wide latitude in the affixing of damages, which in this case is basically a question of fact. We find support in the record for the trial court's findings. We do not find them clearly erroneous. They must be allowed to stand.

We must also reject defendant's third contention of error, namely, that the trial court erroneously failed to award to defendant interest prior to judgment upon a substantial part of its counterclaim. Defendant's counterclaim was for $24,-854.28 upon an open account as reflected by its books from and since March 31, 1958. Plaintiff, by its answer, denied the allegations of the counterclaim. No evidence was submitted upon this phase of the case, but it appears from colloquy between court and counsel at the close of the trial that plaintiff disputed the amount claimed, claiming that it was entitled to an additional credit against the account in the amount of $1,045.89. Ultimately, the parties agreed to split the amount in contention down the middle and judgment for defendant upon the counterclaim was entered by the court pursuant to that agreement for $24,331.68.

Defendant contends that $23,808.39 of the account has not been disputed since March 31, 1958, and that it is, therefore, entitled to statutory interest from that date under the provisions of Ill.Rev.Stat. 1957, c. 74 § 2.

That contention misconstrues the meaning of the statutory language, which provides, *inter alia*, that interest shall be allowed upon open accounts "from the day of liquidating accounts between the parties and ascertaining the balance." No interest can be allowed upon an account when there is a bona fide difference of opinion between the parties to the account as to the balance due. Street v. Thompson, 131 Ill.App. 546, affirmed 229 Ill. 613, 82 N.E. 367.

Here the balance claimed due was disputed by plaintiff until a compromise settlement was reached by the parties just prior to the entry of judgment upon the counterclaim. The court correctly refused to allow interest on any part of the account prior to judgment.

Borden & Selleck Co. v. Fraser & Chalmers, 118 Ill.App. 655, cited by defendant is inapposite. There the defendant had made a written admission that a substantial part of the claimed balance was due and payable, but took the position that no part of the account would be paid until and unless the plaintiff settled the whole account upon terms to be dictated by the defendant. Upon those facts, the court upheld the award of interest prior to judgment upon the uncontested part of the account upon the ground that there had been a vexatious delay in payment thereof. In fortification of its reasoning the court stated, also, that a substantial part of the account had been liquidated when the defendant admitted in writing that the same was due and unpaid. The factual situation there presented is wholly incomparable to that of the case at bar.

We have considered all other arguments and nuances upon arguments presented by defendant in the light of the record made in this case and have found all to be without merit.

The judgment is affirmed.